83 F.3d 930
 20 Employee Benefits Cas. 1528, Pens. Plan Guide P 23919N
INDEPENDENT CONSTRUCTION EQUIPMENT BUILDERS UNION (ICEBU),
et al., Plaintiffs-Appellants,
v.
HYSTER-YALE MATERIALS HANDLING, INCORPORATED, a corporation,
and Hyster Company, Defendants-Appellees.
 No. 95-2745.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 9, 1996.
Decided May 16, 1996.
 
 Franklin Wallace, Brett A. Nelson (argued), Winstein, Kavensky & Wallace, Rock Island, IL, for plaintiffs-appellants.
 L. Lee Smith, Ross E. Canterbury, Westervelt, Johnson, Nicoll & Keller, Peoria, IL, Verne W. Newcomb (argued), Wayne D. Landsverk, Jeffrey Chicoine, Newcomb, Sabin, Schwartz & Landsverk, Portland, OR, for defendants-appellees.
 Before POSNER, Chief Judge, and DIANE P. WOOD, and EVANS, Circuit Judges.
 TERENCE T. EVANS, Circuit Judge.
 
 
 1
 At first glance, this case is about a half a buck. But to paraphrase the namesake of the building where this court sits, "Fifty cents here, fifty cents there--pretty soon you're talking about real money."[1]
 
 
 2
 In November 1988, the Independent Construction Equipment Builders Union (ICEBU) and the Hyster Company (along with Hyster-Yale Materials Handling, Inc., which we'll refer to jointly as Hyster), entered into an agreement ending a labor dispute at Hyster's manufacturing plant in Kewanee, Illinois. This case, brought by the Union and 206 of its members as named plaintiffs, arises from a dispute regarding pension plan language contained in that agreement. The Union appeals from a summary judgment entered on counts II and III of its complaint[2] in favor of Hyster. Count II is a claim for breach of a collective bargaining agreement under 29 U.S.C. § 185(a), § 301 of the Labor Management Relations Act. Count III is a claim, as beneficiaries of a Hyster pension plan, for enforcement of rights to additional benefits under 29 U.S.C. § 1132, § 502 of ERISA. Both counts seek an increase in monthly pension benefits for employees of Hyster retiring after January 1, 1991.
 
 
 3
 Hyster's hourly employees at its Kewanee shop were covered under a pension plan with retirement benefits. Under the plan, members meeting the plan's eligibility requirements may elect to retire and receive normal retirement benefits when they reach age 65 and early retirement benefits when they become 55. The plan calculates monthly retirement benefits by multiplying a monthly rate times the total years of service to Hyster.
 
 
 4
 On November 11, 1988, Hyster and the ICEBU, the exclusive bargaining representative of hourly employees at the Kewanee shop, entered into an agreement settling a labor dispute between the parties. The pension provision of the agreement said:
 
 
 5
 Pension: increased $1.00 per month per year of service effective 1/1/89 for employees retiring after 1/1/89.
 
 
 6
 Plus $.50 increase per year of service effective 10/1/89 for employees retiring after 1/1/90. Plus $.50 increase per year of service effective 10/1/90 for employees retiring after 1/1/91.
 
 
 7
 Following execution of the settlement agreement, Hyster formally amended its pension plan, effective January 1, 1989, in accordance with the agreement's pension provision. Hyster's pension plan, as amended, provided:
 
 
 8
 Upon retirement at normal retirement date, each retired member shall receive a monthly retirement benefit as follows:
 
 
 9
 1. For members retiring on or after January 1, 1989, $17.00 per month for each year of membership service.
 
 
 10
 2. For members retiring on or after January 1, 1990, $17.50 per month for each year of membership service.
 
 
 11
 3. For members retiring on or after January 1, 1991, $18.00 per month for each year of membership service.
 
 
 12
 The dispute in this case boils down to a simple question: Are the 206 individually named plaintiff members of the Union entitled to $17.50 or $18.00 as the multiplier for their pension benefits? So 50 cents is at stake. In real terms, the dispute means that a Hyster worker, with, say, 25 years with the company, gets $12.50 more a month in pension benefits ($150 a year) if the Union carries the day. While $12.50 a month is not a princely sum, every little bit helps when one lives on retirement benefits, so the Union has fought hard to have its view of the case accepted. Hyster, with more money at stake ($30,900 a year if all plaintiffs, sticking with our example, have the same history with the company) has fought equally hard to defeat the Union's claim.
 
 
 13
 On cross-motions for summary judgment, the district court found, with respect to count II, that the ICEBU was not entitled to the additional 50 cents in retirement benefits per year of service because the ICEBU members retired as "former employees" of Hyster, not as "employees." On count III, the court held that the ICEBU members had to be active members of Hyster after January 1, 1991, and then retire after that date to accrue or be credited with the 50-cent increase in benefits. Since they were not active members of Hyster at the time they "retired" in 1991, judgment was entered for Hyster.
 
 
 14
 We review a district court's grant of summary judgment de novo, applying the same standards as the district court and viewing the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. Smith v. Shawnee Library Sys., 60 F.3d 317, 320 (7th Cir.1995). We will affirm the entry of summary judgment only if there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 15
 The plan provides that plan membership ends when active employment with Hyster ceases. That is, an employee whose employment with Hyster terminates is no longer a member of the plan. But if vested under the terms of the plan, the former employee may receive retirement benefits based on membership prior to termination. For former Hyster employees, the plan fixes monthly retirement benefits as of the date of their termination. The plan makes no provisions for monthly rate increases for former employees once employment is terminated.
 
 
 16
 The individual plaintiffs in this case are all former Hyster employees whose employment was terminated on December 17, 1990. On that date, Hyster sold and transferred ownership of its assets to United Dominion Industries, Inc., including the Kewanee facility at which the individual members of the Union in our case worked. Thus, on December 17, 1990, when the individual plaintiffs were terminated, they ceased being employees of Hyster, ceased being members of the plan, and became "former employees."
 
 
 17
 The plaintiffs claimed in this suit, however, that they "retired" after January 1, 1991--at which time they were no longer employees of Hyster. They sought retirement benefits at the rate of $18.00 per month, not the $17.50 monthly rate Hyster said was due under the plan at the time of their separation--December 17, 1990. It is Hyster's contention that $17.50 was the correct monthly rate because the workers are employees who were terminated on December 17, 1990, and who retired after January 1, 1990. Hyster also contends they were former employees as of their termination from Hyster and, therefore, could not be considered "employees retiring after 1/1/91," as that term is used in the pension provision of the settlement agreement.
 
 
 18
 At issue is the following language from the settlement agreement's pension provision:
 
 
 19
 Plus $.50 increase per year of service effective 10/1/90 for employees retiring after 1/1/91.
 
 
 20
 The ICEBU contends that the plain meaning of this language is that any employee of Hyster, current or former, who was working for Hyster on October 1, 1990, who chooses to retire (from any employment or no employment) after January 1, 1991, is entitled to an additional $0.50 increase in monthly pension benefits per year of service. Hyster argues that the term "employees" used in the provision does not include former employees who are no longer employed by Hyster.
 
 
 21
 Our examination of this dispute is guided by certain basic principles. Summary judgment is particularly appropriate in cases involving the interpretation of written contracts. Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir.1989). Where a contract is unambiguous, a court must determine its meaning as a matter of law. Id. A contract is unambiguous if it is susceptible to only one reasonable interpretation. Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki, 44 F.3d 451, 459 (7th Cir.1994).
 
 
 22
 "Employee" is commonly defined as "one employed by another ... and for wages" and "any worker who is under wages or salary to an employer...." Webster's Third New International Dictionary 743 (1986); see also Black's Law Dictionary 525 (6th ed. 1990) (defining "employee" as "[o]ne who works for an employer; a person working for salary or wages"). It is undisputed that Hyster terminated its employees at the Kewanee plant on December 17, 1990--the day it sold the facility to Union Dominion Industries. Therefore, when the individual plaintiffs announced their intention to retire on or after January 1, 1991, they were not employees of Hyster. They were, instead, former employees. The plain meaning of the word "employee" as used in the disputed pension provision excludes persons no longer employed by Hyster and no longer working for salary or wages. The disputed sentence refers to "employees" retiring; it makes no mention of "former employees," which is the status these plaintiffs held at the time they announced their intention to retire after January 1, 1991.
 
 
 23
 Like the district court, we find that the only reasonable interpretation of this sentence is that the $0.50 increase did not take effect until October 1, 1990, and it only applied to employees--not former employees (terminated from Hyster's employ)--retiring after January 1, 1991. When the plaintiffs were terminated on December 17, 1990, they became former employees. Thereafter, when they retired after January 1, 1991, they did so as former employees. We find the language of the settlement agreement's pension provision to be unambiguous; it gives the Union members pension benefits as employees retiring after January 1, 1990, not additional benefits as former employees retiring after January 1, 1991.
 
 
 24
 The Union submits that this interpretation renders the phrase "effective October 1, 1990" in the pension provision meaningless. We disagree. As the district court found, October 1 is simply the designated time when the increase in benefits kicks in. The increase did not take effect until October 1 and it only applied to employees, not former employees, retiring after January 1. In addition, at oral argument, Hyster explained that inclusion of the October 1 date was simply common parlance and a conventional use of the anniversary date of the parties' collective bargaining agreement. Thus, our interpretation of the pension provision language does not render the October 1 date meaningless.
 
 
 25
 Finally, the plaintiffs reiterated their position at oral argument that they are entitled to the increased pension benefits so long as they retired after January 1, 1991-regardless of whether or not they were working for Hyster at the time. Such a narrow interpretation is not reasonable. We cannot expand the plain meaning of the term "employee," used by the parties in their agreement, to find that it includes former employees. Furthermore, having found the disputed pension language of the settlement agreement to be plain and unambiguous, we may not consider extrinsic evidence, and we decline the invitation to do so. See Bidlack v. Wheelabrator Corp., 993 F.2d 603, 608 (7th Cir.1993) (extrinsic evidence should not be used where the contract is unambiguous); Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir.1989) (if the pertinent provisions of a contract are unambiguous, a court need not examine extrinsic evidence to determine the contract's meaning).
 
 
 26
 Moving to count III, plaintiffs alleged that the denial of the pension benefit increase violated their rights under ERISA. Under the terms of the pension plan, the district court found that the plan administrator's denial of increased pension benefits was reasonable and a proper exercise of discretion. Judge Mihm in the district court had this to say on the point:
 
 
 27
 Thus, membership in the plan ends when active employment ceases. The individual Plaintiffs ceased active employment prior to January 1, 1991. Although the individual Plaintiffs retired after January 1, 1991, they retired and applied for benefits as former members, not members. Under the Plan, they were members retiring on or after January 1, 1990. The Court cannot say the plan administrator's denial of the $18.00 monthly rate and interpretation of the Plan was unreasonable.
 
 
 28
 The judge applied the "arbitrary and capricious" standard in upholding the plan administrator's denial of pension benefits. On appeal, plaintiffs do not challenge the plan administrator's denial of benefits under the terms of the pension plan provisions, nor do they challenge the district court's approval of that denial.
 
 
 29
 Instead, the ICEBU advances the argument on appeal that it is entitled to judgment as a matter of law on count III because a "partial termination" of the pension plan occurred on December 17, 1990, when the Kewanee facility was sold and Hyster terminated the individual plaintiffs, who were thereby precluded from continuing their employment. The ICEBU claims that this "partial termination" vested the individual plaintiffs with the additional $0.50 pension benefit increase they seek.
 
 
 30
 In support of its claim, the ICEBU relies on § 411(d)(3) of the Internal Revenue Code, which requires a plan to provide that upon its termination or partial termination,
 
 
 31
 the rights of all affected employees to benefits accrued to date of such termination, partial termination, or discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, are non-forfeitable.
 
 
 32
 26 U.S.C. § 411(d)(3). Thus, a partial termination may accelerate vesting of benefits that have already accrued or been credited to the employee. Here, plaintiffs seek to accelerate the accrual of the 1991 $0.50 pension benefit increase to December 17, 1990. We need not decide whether under the facts of this case a partial termination occurred on December 17, 1990, because § 411(d)(3) does not save the claim. Section 411(d)(3) only requires the vesting of accrued benefits or the amounts credited to the employees' accounts on December 17, 1990, when the alleged partial termination occurred. As of that date, it is uncontested that the individual plaintiffs had not accrued or been credited the half-dollar pension benefit increase per year of service they seek. As we have said, the individual plaintiffs were required to be members of the plan--that is, active employees of Hyster--after January 1, 1991, who then retired after that date, in order to accrue or be credited with the pension benefit increase. Having been terminated on December 17, 1990, the individual plaintiffs never acquired, nor were they ever credited with, the pension benefit increase. Therefore, they have no basis for claiming that the 1991 pension benefit increase would vest in the event of a partial termination.
 
 
 33
 For these reasons, the judgment of the district court entered in favor of Hyster is AFFIRMED.
 
 
 
 [1]
 The late Senator Everett Dirksen (R. Illinois)
 
 
 [2]
 The complaint originally had three counts, and the dismissal of the first one, almost two years ago on an earlier motion, is not challenged on this appeal