Thomas J. MORIARTY, Plaintiff,

v.

James F. SVEC, et al., Defendants.

No. 96 C 7392.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 19, 1998.

Marisel Ayabarreno Hernandez, David S. Allen, Peter Hines, Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, for Plaintiff.

Douglas Alan Darch, Joshua Mark Henderson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Mark Anthony LaRose, Mark A. LaRose, Ltd., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff Thomas J. Moriarty, as one of the trustees of Local Union No. 727, I.B.T. Pension Trust ("Pension Fund"), and Teamsters Local Union No. 727 Health and Welfare Trust ("Health & Welfare Fund") (collectively "the Funds"), brings this action against the defendants to enforce payment of delinquent contributions allegedly due to the Funds pursuant to collective bargaining agreements between the Funeral Directors Services Association of Greater Chicago (FDSA), of which Svec & Sons Funeral Home ("the Funeral Home") was undisputedly a member, and the Auto Livery Chauffeurs, Embalmers, Funeral Directors, Apprentices, Ambulance Drivers and Helpers, Taxicab Drivers, Miscellaneous Garage Employees, Car Washers, Greasers, Polishers and Wash Rack Attendants Union, Local No. 727, I.B.T. ("the Union"). Plaintiff has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) to order defendants to pay such allegedly delinquent contributions. The court will grant the motion for summary judgment *in toto.*

Plaintiff Moriarty brings this action on behalf of the Funds which are employee benefit plans set up to provide employment benefits to members of the Union whose employers are subject to collective bargaining agreements which require the payment of contributions on their employees' behalf. Defendants James F. Svec and Sharon Svec are the owners of the Funeral Home and West Suburban Livery (WSL), although James F. Svec runs both businesses as sole proprietorships under his control. At all times material to this action until December 14, 1995, the Funeral Home was a member of the FDSA which is an association of licensed funeral businesses providing funeral services, livery services, and funeral transportation services. The FDSA negotiates with the Union and enters into collective bargaining agreements on behalf of the FDSA's employer members, who are then bound by the terms of such agreements. The collective bargaining agree-

ments (CBAs) provide that each employer member of the FDSA is obligated to contribute to the Funds for the work performed by their employees in the various classifications within the contractual bargaining unit.

Elmer Svec, who was James and Sharon Svec's father, died on June 29, 1987. Before Elmer Svec's death, he owned the Funeral Home as a sole proprietor, and owned fifty percent of WSL as a partner with his son, James Svec, who owned the other fifty percent of WSL. At Elmer Svec's death, his interest in the Funeral Home and WSL passed to his wife, Anne Svec for a period of time. Some time later, Elmer Svec's interest in the Funeral Home and WSL was divided equally between his two children, James and Sharon Svec, such that James now owns seventy-five percent of WSL and fifty percent of the Funeral Home, and Sharon owns twenty-five percent of WSL and fifty percent of the Funeral Home. On February 16, 1988, Anne Svec executed a disclaimer renouncing all her rights, title, and interest as a joint tenant in the real property upon which the Funeral Home is situated. On April 15, 1993, James and Sharon Svec each signed documents evidencing receipt of their respective shares in the Svec & Sons Funeral Home business. The effect of the disclaimer of February 16, 1988, and of the documents signed on April 15, 1993, are disputed by the parties.

James Svec alleges that he became an owner of the Funeral Home on February 16, 1988, when he claims that his mother disclaimed her entire interest in the business whereupon it passed to him and his sister. Because James Svec was allegedly a "principal owner" of the Funeral Home for this time period, he claims that he does not fall under the definition of "employee" as stated in the CBAs, and therefore James Svec does not owe contributions to the Funds on his own behalf for work he performed during that time. James Svec also claims that he is not liable as a successor to his father, Elmer Svec, for contributing to the Funds pursuant to the CBAS in effect during Elmer Svec's sole proprietorship (here the relevant time period would be January, 1987 through June, 1987). Plaintiff claims that the CBAs require payment of contributions to the Funds on James F. Svec's behalf under the terms of the CBAs in effect from January 1, 1987 through September 30, 1995. Moriarty also states that even if the court were to find that "principal owners" were not "employees" as defined in the CBAs, James Svec was not a "principal owner" of the Funeral Home business until April 15, 1993, so that there would be no basis for defendant's claim that he was not an "employee" of the Funeral Home for the period from January, 1987 through April, 1993.

Plaintiff asserts that from October 1, 1993 through December 31, 1995, James F. Svec and Sharon Svec (WSL defendants) were contractually obligated under the terms of the CBAs to contribute to the Funds on behalf of the employees in the bargaining unit at WSL, which WSL defendants failed to do. Plaintiff claims that WSL is subject to the CBAs entered on behalf of the Funeral Home, and therefore contributions must be made to the Funds for the work performed by its bargaining unit employees during the relevant time period. WSL defendants claim that WSL was never a member of the FDSA and was therefore never subject to any CBA which requires them to contribute on behalf of WSL's employees.

Plaintiff's prayer for relief states that James F. Svec owes $29,580 to the Health & Welfare Fund and $13,246 to the Pension Fund for work he performed as an employee at the Funeral Home. The complaint also states that WSL defendants owe $11,444 to the Health & Welfare Fund and $6,358.50 to the Pension Fund for work performed by the bargaining unit employees of WSL. Plaintiff asks the court to award the fees and cost of the audit which was necessary for bringing this lawsuit as well as his reasonable attorney's fees and costs of this action.

## I. DELINQUENT CONTRIBUTIONS ON BEHALF OF JAMES F. SVEC

Summary judgment is appropriate when "no genuine issue as to any material fact" exists, and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In deciding whether to grant summary judgment, the court construes the evidence and all inferences which can be reasonably drawn therefrom in the light most favorable to the nonmovant (defendants in

this case). *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997). The Employee Retirement Income Security Act of 1974 (ERISA) provides in part that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (1997). In the instant case, there are a series of collective bargaining agreements entered between the FDSA and the Union which must be given effect. Defendant claims that the term "employee" in the CBAs is ambiguous, the interpretation of which requires a finding of fact, and therefore summary judgment is inappropriate. Plaintiff contends that the term "employee" is unambiguous and therefore the court must enforce the clear language of the CBAs as a matter of law.

■ "Summary judgment is particularly appropriate in cases involving the interpretation of written contracts." *ICEBU v. Hyster Yale Materials Handling, Inc.,* 83 F.3d 930, 932–33 (7th Cir.1996) (citing *Ryan v. Chromalloy American Corp.,* 877 F.2d 598, 602 (7th Cir.1989)). Where a contract is susceptible to only one reasonable interpretation, it is unambiguous, and the court must determine its meaning as a matter of law. *ICEBU,* 83 F.3d at 933. When interpreting contracts or collective bargaining agreements, the Seventh Circuit has held that:

> Although extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous, perhaps because the parties were using words in a special sense, *FDIC v. W.R. Grace & Co.,* 877 F.2d 614, 620–21 (7th Cir.1989), there must be either contractual language on which to hang the label of ambiguous or some yawning void ... that cries out for an implied term.

*Bidlack v. Wheelabrator Corp.,* 993 F.2d 603, 608 (7th Cir.1993). James Svec does not argue that the term "employee" itself or its contractual definition is ambiguous, rather he argues that "[n]otwithstanding [the] seemingly clear language [of the CBA's definition of "employee"], 'principal owners' of FDSA members who perform funeral directing or embalming are not 'employees.'" Response brief, p. 12. "Employee" is defined in the CBAs covering funeral directors and embalmers as "[a]ny member of the union who is in the employ of an employer member who is licensed to and who does embalming and/or funeral directing or who is serving as a trainee embalmer or funeral director trainee." James Svec, for all times relevant to this case, has been a member of the Union, and has been licensed to do funeral directing and embalming and has done funeral directing for the Funeral Home. The Funeral Home has also been an "employer member" (member of the FDSA) during the relevant time period.

James Svec cites a case from this court which recites the testimony given at trial by plaintiff Moriarty regarding those who are required to contribute to the Funds as "employees" of FDSA members. In that case, Moriarty testified "to an industry practice that had been worked out between Association and Union, under which the principal owners of funeral homes that are Association members are not viewed or treated as 'employees' of the funeral homes for purposes of requiring contributions to Funds based on their compensation." *Moriarty v. Glueckert Funeral Home, Ltd.,* 967 F.Supp. 1038, 1045–46 (N.D.Ill.1997) (Shadur, J.). As the court reads Judge Shadur's recitation of Moriarty's testimony in that case, it does not appear to establish that "employee" is an ambiguous term. It only shows that the FDSA received an oral promise from the Union whereby FDSA members are not required to satisfy the full scope of the language in the CBAs. Implicit in the "working out" of a deal between the FDSA and the Union is the fact that the understanding at which the parties arrived is not tautological. Obviously the reasonable interpretation of "employee" in the CBAs was not the interpretation with which at least one of the parties was content—hence their negotiations. However, the job of this court is to interpret the language of the CBAs themselves, not to ascertain what one or both of the parties might have ideally included in their final agreement. The CBAs are renegotiated frequently, yet despite the purported oral agreement

between the FDSA and the Union, they have apparently never arrived at an agreement to specifically exclude principal owners from the definition of "employee" in the CBAs themselves.

Section 515 of ERISA provides that every employer who is obligated, according to the terms of a collective bargaining agreement, to contribute to a multiemployer plan shall "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145 (1997). For this reason, the Seventh Circuit has held that:

> If the employer simply points to a defect in its formation—such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law—it must still keep its promise to the pension plans.

*Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1153 (7th Cir.1989) (en banc). Furthermore, § 515 of ERISA "prevents a court from giving force to oral understandings between union and employer that contradict the writings." *Id.* at 1154.

Defendant also cites the interpretation which the courts have given the term "employee" in the context of the National Labor Relations Act (NLRA) in an attempt to prove that "employee" is ambiguous. Under the NLRA, defendant James Svec states that owners, children of owners, and managers are exempted from the requirements of the statute. These exemptions, he maintains, establish the common usage of the term "employee" in the labor-management context. However, the language of the CBAs themselves controvert this assertion. Article II, Section 4 of the July 1, 1994 CBA for funeral directors and embalmers defines the work week and work day for employees in the bargaining unit. The 1994 CBA, which practically mirrors provisions in the previous CBAs which cover the relevant time period

for this case, specifically states that "the provisions set forth in this Section shall not apply to Managers, District Managers, Regional Managers and Area Managers." Plaintiff's Exhibit 9. If the labor-management context within which the CBAs were drafted was such that managers, owners, and children of owners were already exempted, then this particular language would be superfluous.

The language in Article II, Section 4 of the CBAs also defeats James Svec's assertion of ambiguity relating to the industry practice between the FDSA and the Union to which Moriarty testified in the case of *Glueckert Funeral Home, Ltd.*, If the negotiators had wished to exempt owners from the requirement to contribute to the Funds, they could have done so quite easily as they did when exempting managers from the CBAs' work day and work week requirements, yet even the most recent CBA fails to include an exemption for principal owners. In ruling on a motion for summary judgment, the Seventh Circuit has held that:

> Although we owe [the nonmovant] the obligation to examine the record in the light most favorable to her, our indulgence extends no further than the record before us. Once [the movant] made the preliminary showing that there was no dispute of material fact compelling a trial, the burden was [the nonmovant's] to identify evidence to the contrary.

*Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 505 (7th Cir.1998). Defendant has failed to present sufficient extrinsic evidence to prove that the term "employee" is ambiguous, therefore there is no material fact which is disputed concerning the issue of delinquent contributions owed to the Funds on behalf of James F. Svec. As shown above, James Svec satisfies the contractual definition of "employee" and is therefore liable for the payment of delinquent contributions to the Funds for work performed on his own behalf.[1]

---

1. Defendants, in their Response to Plaintiff's 12(m) Statement of Material Facts, respond to paragraph 32 of Plaintiff's 12(m) statement by objecting to the admission of Plaintiff's Exhibit 8, the Addendum to the March 1, 1992 through June 30, 1994 CBA covering Funeral Directors, Embalmers, Funeral Director Trainees, Trainee Embalmers and Trade Embalmers, because it is not properly authenticated. The affidavit submitted by plaintiffs of John Coli, Secretary–Treasurer of the Union, contains a clerical error purporting to establish that Exhibit 8 is an addendum to the 1989–1991 CBA rather than the 1992–1994 CBA. The applicable time period for

## II. SUCCESSOR LIABILITY

In a supplement to his summary judgment response brief, defendant James Svec presents this court with a recent decision of the Illinois Supreme Court which purportedly establishes that James Svec is not required to pay delinquent contributions to the Funds for the period during which Elmer Svec was the sole proprietor of Svec & Sons Funeral Home (the relevant time period for this case being January 1, 1987 through June 29, 1987). The case cited by defendant restates the common law rule in Illinois regarding successor liability, which has also been acknowledged by the federal courts: "The well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Vernon v. Schuster*, 179 Ill.2d 338, 228 Ill. Dec. 195, 688 N.E.2d 1172, 1175 (1997) (citations omitted); *see also Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325 (7th Cir.1990). A successor corporation is, however, liable for the debts of its predecessor when (1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) the purchaser is merely a continuation of the seller; or (4) the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Vernon v. Schuster*, 179 Ill.2d 338, 228 Ill.Dec. 195, 688 N.E.2d 1172, 1175.

However, "the Supreme Court and [the Seventh Circuit] have imposed liability upon successors beyond the bounds of the common law rule in a number of different employment-related contexts in order to vindicate important federal statutory policies," *Artistic Furniture of Pontiac*, 920 F.2d at 1326, one of which is the recovery of delinquent multiemployer pension fund contributions under ERISA, *Id.* at 1327. An exception to the common law rule will be applied to vindicate an important federal statutory policy where "the successor has had prior notice of the liability in question, and where there has existed sufficient evidence of continuity of operations between the predecessor and successor." *Id.*

As to the issue of notice by the successor regarding the existence of collective bargaining agreements entered into by his predecessor, the Seventh Circuit has noted that "there is no question that the successor knows of any collective bargaining agreements that his predecessor has signed...." *EEOC v. Vucitech*, 842 F.2d 936, 945 (7th Cir.1988). Therefore, James Svec would be precluded from claiming that he had no knowledge of the CBAs to which his father was a party. Regarding continuity of operations, there appears to have been no change at all in the operation of Svec & Sons Funeral Home upon the death of Elmer Svec. In fact, it is undisputed that James Svec began managing the day-to-day operations of the Funeral Home himself prior to his father's death. The Funeral Home continued providing funeral services as well as livery services after James Svec and Sharon Svec assumed ownership of the Funeral Home, and apparently, the same work force continued in their employment regardless of the change in ownership. Normally, the exceptions to successor non-liability recited in *Artistic Furniture of Pontiac* are used to determine successor liability when one corporation's assets are bought by another, presumably to avoid assuming the debts of the seller corporation. However, in this case, the court is not presented with such a scenario and it therefore becomes fairly easy in this instance to determine from the facts that there is indeed continuity of operations between the sole proprietorship of Elmer Svec and the partnership of James Svec and Sharon Svec. Indeed, if the instant case does not present a case of continuity of operations, then there are none which would satisfy this exception. James Svec is therefore liable as a successor to his father, Elmer Svec.

## III. DELINQUENT CONTRIBUTIONS ON BEHALF OF WSL EMPLOYEES

Finally, plaintiff claims that delinquent contributions are due to the Funds for work performed by the employees of WSL in the bargaining unit. Plaintiff claims that even though WSL has never been formally a

the Addendum, however, appears on its face and is readily understood by the court.

member of the FDSA, it is subject to the CBAs nonetheless because it is either an alter-ego of the Funeral Home, it has displayed an intent to be bound by the terms of the CBAs, or WSL and the Funeral Home are a single employer. The single employer test is dispositive in this case, therefore the court will not reach the other criteria raised by the plaintiff to establish WSL's liability. Courts will treat nominally distinct businesses as one when single employer status is established. When two businesses are actually a single employer, then both businesses will be equally liable under a collective bargaining agreement entered on behalf of only one of them. WSL and the Funeral Home will be considered a single employer if they comprise an integrated enterprise, the controlling criteria being: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers, AFL—CIO*, 425 U.S. 800, 802 n. 3, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (quoting *Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service*, 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965)).

WSL defendants concede that WSL and the Funeral Home are commonly owned and managed. Furthermore, as to the issue of centralized control of labor relations, it is undisputed that James Svec does the hiring and firing of all employees for both WSL and the Funeral Home, as well as deciding for which new employees contributions will be made. WSL defendants wish to make an issue of the fact that some of the paperwork relating to labor relations was handled by Sharon and Anne Svec (filing remittance reports to the Funds on behalf of Funeral Home employees, handling the payroll, and informing the FDSA of the Funeral Home's withdrawal). In support of their contention that this establishes decentralized control of labor relations, WSL defendants cite a Seventh Circuit case which applied the single employer test in a scenario involving a non-union sole proprietorship which entered into a licensing agreement with a unionized corporation for use of the latter's corporate name. In that case, *Trustees of Pension, Welfare and Vacation Fringe Benefit Funds*

*of IBEW Local 701 v. Favia Electric Co., Inc.*, 995 F.2d 785 (7th Cir.1993), Thomas Miniscalcos (Thomas) was the owner of the sole proprietorship and his wife, Mary Ann Miniscalcos (Mary Ann), was elected president and sole director of the corporation. Although the court found that Thomas handled the hiring and firing for both the proprietorship and the corporation, it found that Mary Ann handled the bulk of the paperwork for the corporation's dealings with the labor union. Contrary to WSL defendants' assertion, this particular holding does not support their position. The pertinent finding by the court was that some responsibility was divided between Thomas and Mary Ann respective to the particular company or corporation which they controlled. Here, James Svec owns both companies along with his sister, Sharon Svec—no formal division of labor exists between them, nor do they perform duties which evidence any separation of responsibilities along company lines. Just because James Svec does not do all the work does not mean that control of labor relations within the two companies is decentralized. Indeed, it is undisputed by the parties that James Svec runs both businesses as if he were a sole proprietor—implying that he ultimately controls labor relations for both companies.

Regarding interrelation of operations between WSL and the Funeral Home, it appears that the left hand certainly knows what the right hand is doing. WSL operates out of the same building as the Funeral Home, and its office materials, besides a desk, can fit into a space the size of a briefcase. The Funeral Home, WSL and James Svec's apartment are all located in a single building on Cermak Road in Berwyn, Illinois. WSL does not pay rent for its office, but pays $1,000 a month for the use of the garage which also houses the vehicles owned by the Funeral Home. James Svec provides for the maintenance of the vehicles owned by both the Funeral Home and WSL in the same garage. As stated above, James Svec hires and fires employees for both the Funeral Home and WSL, and decides for which new employees he will make contributions to the Funds. James Svec also schedules and makes arrangements for livery services pro-

vided by both the Funeral Home and WSL. WSL has no single telephone line which has been designated for it, and WSL's telephone calls often come through the Funeral Home's telephone line. WSL also fuels and maintains proper oil levels for the Funeral Home vehicles. WSL maintains the grounds of the Funeral Home as well as providing some of the maintenance for the physical structures on the Funeral Home property, including the Funeral Home building itself. WSL is paid an indefinite amount from month to month for these services. In 1987, all of WSL's drivers were drivers employed by the Funeral Home. The Funeral Home operates vehicles of its own, however, when there is a need for additional livery, the Funeral Home will use either WSL's services or the livery services of another company. From 1987 to 1994 [2], the amounts which were paid out from the Funeral Home to WSL generally increased while the amounts paid to other livery services generally decreased such that in the years 1990, 1991, 1993, and 1994, the amount paid by the Funeral Home to livery services other than WSL amounted to zero. WSL and the Funeral Home do maintain separate records and bank accounts however. Regardless of these last two factors, WSL and the Funeral Home still evidence a high degree of interrelation of operations.

The *Favia* court, after weighing the factors involved in the single employer test, states the following: "Finally, the two businesses were not commonly owned. Neither Thomas nor Mary Ann ever held any stock in Favia Electric.... Therefore, this factor stands strongly against the imposition of single employer liability." *Favia Electric Co., Inc.*, 995 F.2d at 788. In the instant case, WSL and the Funeral Home are owned by the same two people—James Svec and Sharon Svec. Although the balancing of the factors involved in the single employer analysis is a fact-specific inquiry, the factors in the instant case weigh so heavily in favor of single employer status, that no reasonable fact finder could render a judgment in WSL defendants' favor. "An issue of fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir.1997). Accordingly, sum-

mary judgment is granted in plaintiff's favor regarding the obligation to pay delinquent contributions to the Funds for work performed by the bargaining unit employees of WSL.

ORDERED: Plaintiff Thomas J. Moriarty's motion for summary judgment is granted. Plaintiff shall submit a proposed judgment in chambers no later than February 25, 1998, which shall state the amount of unpaid contributions plus interest which is owed by defendants to plaintiff with affidavits to support the amount of plaintiff's reasonable attorney's fees and costs of this action, as well as to support the fees and cost of the audit performed by plaintiff. Defendants may submit a response objecting to plaintiff's computation of damages no later than March 4, 1998.

**2.** The defendants failed to produce records for 1995.