**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued December 8, 2011
Decided March 15, 2012

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 06-4350

| | |
|---|---|
| CENTRAL ILLINOIS CARPENTERS HEALTH AND WELFARE TRUST FUND and CARPENTERS WELFARE, PENSION AND RETIREMENT SAVINGS FUNDS OF ILLINOIS, | Appeal from the United States District Court for the Central District of Illinois. |
| *Plaintiffs-Appellees*, | No. 03 CV 3250 |
| *v.* | Jeanne E. Scott, *Judge*. |
| JAY J. OLSEN d/b/a J&L BUILDERS and J&L CONSTRUCTION, | |
| *Defendant-Appellant*. | |

**O R D E R**

Central Illinois Carpenters Health and Welfare Trust Fund ("Central Illinois Fund") is a fringe benefit collection agent for funds administered by the Mid-Central Council of Carpenters. Carpenters Welfare Fund of Illinois, Carpenters Pension Fund of Illinois, and Carpenters Retirement Savings Fund of Illinois ("Welfare, Pension, and Retirement Funds") are the fringe benefit collection agents for funds administered by the Heartland Council. Central Illinois Fund and the Welfare, Pension, and Retirement Funds (jointly "the Funds"), sued Jay Olsen under ERISA, alleging that Olsen failed to make contributions required by

various collective bargaining and trust agreements.  The district court granted the Funds summary judgment on liability, concluding that Olsen was obligated to make additional payments to the Funds.  However, the court held that a genuine issue of material fact precluded summary judgment on the issue of the exact amount of money he owed. The parties later stipulated to the amount.  Olsen now appeals, claiming that the district court erred in granting the plaintiffs summary judgment on the issue of liability and in denying his motion for summary judgment.  We affirm.

I.

Jay Olsen is in the construction business.  He conducts business as a sole proprietor doing business as ("d/b/a") J & L Construction and J & L Builders.  According to Olsen, J & L Construction performs only residential work while J & L Builders performs only commercial work.  Olsen states that J & L Construction and J & L Builders "maintain separate books, separate accounting practices, separate bank accounts and have separate clients."  Olsen, though, is the sole owner of both J & L Builders and J & L Construction and, from his home in Normal, Illinois, controls the operations, management, and labor relations for both businesses.  Olsen personally maintains the time and payroll records for both J & L Builders and J & L Construction, and they share one crew of employees.  When employees work on residential projects they work under the name of J & L Construction, and when they work on commercial projects it is under the name of J & L Builders.  The employees receive one W-2 form, which includes income from both J & L Builders and J & L Construction.  And J & L Builders and J & L Construction share the same FEIN number.

On May 14, 1997, Jay Olsen, d/b/a J & L Builders (the commercial business), signed a Memorandum of Agreement with the Carpenters Local Union 195.  Among other things, in the Memorandum of Agreement Olsen agreed to be bound by the terms of various trust agreements of fringe benefit funds.  He also agreed to be bound by the Collective Bargaining Agreement between Heartland Regional Council of Carpenters United Brotherhood of Carpenters & Joiners of America AFL-CIO Local 195, Ottawa, Illinois, and Illinois Valley Contractors Association, Inc., covering Commercial and Residential Work Performed in the Illinois counties of Bureau, LaSalle, Marshall, Putnam and Stark ("Heartland CBA").  The Heartland CBA was effective from June 1, 1998, to May 31, 2003.

On April 27, 1998, Jay Olsen, d/b/a J & L Builders, signed an agreement recognizing the Mid-Central Illinois District Council of Carpenters as the exclusive bargaining representative and adopting all collective bargaining agreements to which that labor organization was a party.  The agreement further incorporated all collective bargaining

agreements between Central Illinois Builders of the A.G.C., Builders Association of Tazewell County, McLean County Contractors Group, Greater Peoria Contractors and Suppliers Association, Inc., and Mid-Central Illinois District Council of Carpenters ("Mid-Central CBA"). The Mid-Central CBA was effective May 1, 1998, through April 30, 2003, and covered both commercial and residential work.

The Funds sued Jay Olsen in a three-count complaint. In Count I, the Central Illinois Fund alleged that Jay Olsen, d/b/a J & L Builders, failed to make fringe benefit contributions required by the Mid-Central CBA and trust agreements. Count II was brought by the Welfare, Pension, and Retirement Funds, and alleged that Jay Olsen, d/b/a J & L Builders, failed to make fringe benefit contributions required by the Heartland CBA and related trust agreements. In Count III, the Funds alleged that Jay Olsen is personally liable for the fringe benefits of his employees as alleged in Counts I and II "regardless of whether they were employed by J & L Construction" or J & L Builders.

Prior to filing suit, the Central Illinois Fund hired Romolo & Associates to audit the payroll records of J & L Builders for the period of April 1, 1998, to March 31, 2000, to determine whether J & L Builders was in compliance with its reporting obligations. Following the audit, M. Joseph Romolo, a Certified Public Accountant, issued a report of on behalf of Romolo & Associates which concluded that Olsen owed the Central Illinois Fund an additional $15,702.10 on behalf of three employees — Derek Harken, Todd Conklin, and Jeff Dickerson. The Welfare, Pension, and Retirement Funds also engaged Romolo & Associates to examine the payroll records of J & L Builders. This second audit was for the period of May 1, 1998, to December 31, 1998, and concluded that additional amounts were due the Welfare, Pension, and Retirement Funds, this time in the amount of $7,687.54 for Harken, Dickerson, Paul Vesper, and Richard Wills. Finally, Romolo & Associates performed a third audit of the payroll records of J & L Builders for the period from January 1, 1999, to March 31, 2000. Similar to the other two reports, this third audit (performed for the Welfare, Pension and Retirement Funds) concluded that Olsen owed an additional $9,517.10 to the Welfare, Pension and Retirements Funds for hours worked by Harken, Dickerson, and Conklin.

During discovery, the Funds questioned Olsen about the conclusions of Romolo & Associates' payroll audit reports. During his deposition, Olsen admitted that Conklin, Dickerson, Harken, and Vesper were residential carpenters and that the audit reports accurately listed the number of hours they worked during the audit periods. Olsen nonetheless maintained that no contributions were due the Funds because the employees were performing residential carpentry work for J & L Construction and not for J & L

Builders, and that J & L Construction was not liable for contributions because it was not a party to the collective bargaining agreements.

Following discovery, the parties filed cross-motions for summary judgment. The Funds argued that Olsen's deposition testimony and the three Romolo payroll audits established, as a matter of law, Olsen's liability under ERISA. Olsen countered that the Romolo audits were insufficient to establish either liability or damages because they were not audits conducted pursuant to Generally Accepted Accounting Principles ("GAAP"). The district court concluded that the Funds were entitled to summary judgment on the issue of liability, but that a factual dispute existed on the amount of damages. The parties later stipulated to the amount of damages. Olsen then filed this appeal.

## II.

On appeal, Olsen argues that the district court erred in granting the Funds summary judgment on the question of liability and in denying his own motion for summary judgment. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review grants of summary judgment *de novo,* viewing the record in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor. Moreover, "[a]lthough we have previously cautioned against weighing evidence at summary judgment, we have also said that a factual dispute is 'genuine' only if a reasonable jury could find for either party." *Blood v. VH-1 Music First,* 668 F.3d 543, 546 (7th Cir. 2012) (internal citations and quotation omitted).

The district court denied Olsen summary judgment and granted the Funds summary judgment based on the Funds' claims under ERISA. Under ERISA,

> Every employer who is obligated to make contributions to a multiemployer
> plan under the terms of the plan or under the terms of a collectively
> bargained agreement shall, to the extent not inconsistent with law, make such
> contributions in accordance with the terms and conditions of such plan or
> such agreement.

29 U.S.C. § 1145.

Olsen maintains on appeal that he is not obligated to make contributions for work performed by employees working for J & L Construction because J & L Construction was

not a party to any collective bargaining agreement requiring such payments. Alternatively, Olsen argues that even if he could be liable for contributions for employees of J & L Construction, the Funds have failed to establish such liability because they did not obtain an audit in conformity with GAAP. We consider each issue in turn.

First, it is well established under ERISA's single employer doctrine "that when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes." *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998) (citing *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv.*, 380 U.S. 255, 256 (1965)). And if two entities qualify as "single employer," then each business is required to make health and welfare contributions as mandated by a governing CBA, even if one entity did not sign the CBA. *Id.* at 332. In determining whether two entities comprise a "single employer," ERISA asks whether they are "under common control." 29 U.S.C. § 1301(b)(1). There are four factors which inform this determination: 1) the interrelation of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership. *South Prairie Constr. Co. v. International Union of Operating Eng'rs*, 425 U.S. 800, 802 n.3 (1976).

Before considering these factors, we pause to note that it is questionable whether the single employer doctrine and its four factors even apply in this case because J & L Construction and J & L Builders are not two separate legal entities. They are simply assumed names under which Olsen conducts business as a "sole proprietorship." *See Moriarty*, 164 F.3d at 336 (Manion, J., concurring); *see also Vernon v. Schuster*, 688 N.E.2d 1172, 1176-77 (Ill. 1997) ("It is well settled that a sole proprietorship has no legal identity separate from that of the individual who owns it."). In other words, the names "J & L Construction" and "J & L Builders" are merely other names for "Olsen's." And Olsen is one man who owns a single business, and thus is a single employer, without resort to the single employer doctrine.

But the Funds do not make this argument and instead plod through the factors, so we will too. The district court concluded that those factors demonstrate as a matter of law that J & L Construction and J & L Builders constitute a single employer under the common control of Olsen. We agree. The sole proprietor status of both J & L Construction and J & L Builders conclusively disposes of three of the four factors: Olsen, as the sole owner, has centralized control of all labor relations and is the common management and common owner of both businesses. That leaves only the "interrelations of operations" factor. The undisputed facts also show that J & L Construction and J & L Builders have interrelated operations. While Olsen maintains separate accounting systems, books and bank accounts, the same employees work for both J & L Construction and J & L Builders and receive one

W-2 form, which includes income earned by the employees while performing work for both J & L Construction and J & L Builders. Olsen also personally maintains the time and payroll records for both J & L Builders and J & L Construction and runs both out of his home in Normal, Illinois. Finally, J & L Builders and J & L Construction share the same FEIN number. The operation of J & L Builders and J & L Construction is thus highly interrelated, even though Olsen maintains separate records and uses a different name for his business depending on the type of customer he is serving. Such differences are irrelevant. For instance, in *Moriarty*, this court concluded that a sole proprietor of a funeral home and a livery service was liable for contributions under a single employer theory, *Moriarty*, 164 F.3d at 335, even though the owner maintained separate records and bank accounts. *Moriarty v. Svec*, 994 F.Supp. 963, 970 (N.D. Ill. 1998).

Olsen attempts to overcome the conclusion that J & L Builders and J & L Construction constitute a single employer by arguing that the unions viewed them as separate entities as shown by the existence of separate agreements with both J & L Builders and J & L Construction. Specifically, Olsen points to a 1997 Recognition Agreement with Mid-Central signed by Jay Olsen, d/b/a J & L Construction. (That agreement terminated in January of 1998 and the Funds are not seeking contributions under that agreement.) Olsen then argues that since Mid-Central entered into agreements with both J & L Construction and J & L Builders, the two must be separate entities. Olsen's argument is misplaced for two reasons. First, J & L Construction and J & L Builders are sole proprietorships and thus the agreements were with Olsen personally and not with separate entities. Second, even if the unions recognized two separate entities, that is irrelevant because the "single employer" test presumes that there are two employers and then asks if they are under common control and thus should be treated as a single employer under ERISA. The existence of agreements entered into by differently named sole proprietorships does not alter in any way the balancing of the factors: there is still common management, a common owner, centralized control over labor relations, and a close interrelation of operations. In short, as the district court concluded, based on the facts in this case, no reasonable jury could find that J & L Builders and J & L Construction are two separate employers. Accordingly, Olsen is required to make contributions to the Funds for covered employees whether they worked under the name of J & L Construction or J & L Builders. *See Moriarty*, 164 F.3d at 335.

Olsen argues that even if he is required to make contributions for employees of both J & L Construction and J & L Builders, the Funds can only establish that contributions are owed if they perform an audit in conformity with GAAP. Olsen then contends that because no such audit was performed, the Funds cannot establish liability.

Olsen's argument is misplaced for two reasons.  First, neither the CBA nor the trust agreements require an audit to establish liability.  Rather, liability for contributions to the Funds arises if covered work, as defined by the CBAs and other agreements, was performed.  Olsen concedes that the CBAs and other agreements covered residential carpentry work and in his deposition testimony he confirmed that several employees of J & L Construction performed residential carpentry work but that no contributions were made.  There is nothing in the CBAs or trust agreements which requires the Fund to obtain an audit to establish that covered work was in fact performed.

In response, Olsen cites to language from one trust agreement which states: "The Trustees may . . .  have *an audit* made by an independent certified public accountant . . . of the payroll of any Employer in connection with . . . contributions."  (emphasis added).  And he then quotes from other trust agreements which provide: "In the event that upon audit made by the Trustees and/or upon other evidence it is found by the Trustees that an Employer has failed to make required Employer Contributions," the Trustee may seek a variety of remedies.  No part of this language, though, *requires* an audit to establish liability; rather, the language only provides that a trustee *may* have an audit.  It thus merely recognizes that an audit may be conducted, but does not establish an audit as a condition precedent to liability.

Second, even if the trust agreements required an "audit" to establish liability, the Funds obtained an audit within the meaning of the trust agreements.  While Olsen objects that the audits were not audits conducted pursuant to GAAP, the above language does not require an audit under GAAP, but rather states that the Trustees may have "an audit . . . of the *payroll*" or in the case of the second set of trust agreements, an "audit . . . . or . . .  other evidence."  The audit Romolo & Associates performed was a payroll audit and "other evidence," thus satisfying the various provisions on which Olsen relies for his proposition that an audit was required.  While Olsen also challenges the assumptions of the audit (for instance, the Funds' direction to Romolo & Associates to treat any work not clearly identified as not covered, as covered), he admitted in his deposition that the audit correctly identified the hours worked by several residential carpenters.  Accordingly, even if there were some problems with the audits, they were nonetheless sufficient to establish liability, i.e., that some additional contributions were required.  Thus, even if the trust agreements required an "audit," the payroll audit performed by Romolo & Associates satisfied the trust agreements and established Olsen's liability to the Funds.  The district court therefore properly granted the Funds summary judgment and denied Olsen's motion for summary judgment.

III.

J & L Construction and J & L Builders are sole proprietors and a single employer for purposes of ERISA. Accordingly, Olsen, the owner, is liable for contributions under the CBA and other agreements he signed, whether doing business as J & L Construction or as J & L Builders. Olsen admitted that the CBAs required contributions for residential carpenters and that he did not make contributions for residential carpenters who worked for J & L Construction. These admissions are sufficient, in themselves, to establish Olsen's liability to the Funds. Contrary to Olsen's argument, the trust agreements do not require an audit pursuant to GAAP to establish liability and even if an "audit" were required, the payroll audit performed by Romolo & Associates would qualify. Accordingly, the district court properly granted the Funds summary judgment on the issue of liability and denied Olsen's motion for summary judgment. For these and the foregoing reasons, we AFFIRM.